# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

TERRYLYN MCCAIN,

        Plaintiff,

v.

BANK OF AMERICA, *et al.*,

        Defendants.

Civil Action No. 13-1418 (BAH)

Judge Beryl A. Howell

## MEMORANDUM OPINION

Plaintiff Terrylyn McCain, who is proceeding *pro se*, brings this lawsuit against ten defendants, including financial institutions, property owners, the California Superior Court in San Joaquin County, the Sheriff of San Joaquin County and that Sheriff's Department, seeking a declaratory judgment with respect to the title of her San Joaquin, California home and an injunction against any eviction from or foreclosure of the property on grounds that such foreclosure and eviction violate her due process rights, have caused intentional infliction of emotional distress, contravene the False Claims Act, 31 U.S.C. §§3729 *et seq.*, and violate a consent judgment entered against multiple financial entities, including Bank of America, N.A. ("BOA"), in an unrelated matter pending in this Court. *See* First Amended Compl. ("FAC") *generally*, ECF No. 4.

Pending before the Court are motions by the plaintiff for a temporary restraining order and by the defendants for dismissal of this lawsuit on multiple grounds. For the reasons explained below, the defendants' motion to dismiss for improper venue is granted.

I.   BACKGROUND

The plaintiff's eighty-two page amended complaint provides the factual allegations outlined below. The plaintiff is a California homeowner, whose property is located in San Joaquin County, California. *See* FAC ¶ 108. The plaintiff originally obtained a mortgage from a non-party company, which subsequently "assigned" the mortgage to defendant BOA. *Id.* ¶¶ 11; 21. BOA thereafter foreclosed on the plaintiff's mortgage and the property was sold to defendants Vanzetti Properties, John Vanzetti, Anthony Ghio, and Steven Vanzetti ("Property Owner Defendants"). *Id.* ¶ 23. The plaintiff alleges that these defendants, acting as agents of BOA, coordinated with "local government agencies" to deprive the plaintiff of her personal property in "violation the consent [judgment]." *Id.* ¶ 21.[1] Specifically, the plaintiff claims that defendants "have deliberately and with malice raced at break neck speed towards foreclosure and eviction of the [plaintiff] from her home in absolute defiance of several provisions of [a] CONSENT DECREE . . . and have acted as if they have powers to enforce the note even though they have not proved their ownership interest in the note and have not proved their possession of the original note." *Id.* ¶ 11.

The crux of the plaintiff's complaint is that the transfer of the deed of trust to BOA was fraudulent. *Id.* This led BOA "and it [sic] agents," which allegedly include defendants Recontrust Company N.A. and the Bank of New York Mellon (collectively with BOA, the "Bank Defendants"), to "foreclose on [the plaintiff's] home without any admissible evidence that they are the note holders in violation of numerous sections of the Uniform Commercial Code." *Id.* ¶ 27. This purportedly violated the "Consent [judgment] . . . [which] specifically prohibits many of the particular actions taken by the [d]efendants." *Id.* ¶ 30. The plaintiff alleges that

---

[1] The plaintiff refers in the FAC to a consent judgment entered into by five banks, including BOA, in this Court. *See* Consent Judgment, *United States v. Bank of Am. Corp.*, No. 12-CV-361 (D.D.C. Apr. 4, 2012), ECF No. 11 ("Unrelated Consent Judgment").

under the consent judgment, "all pleadings and other court documents in foreclosure proceedings must be accurate and complete," a requirement which allegedly cannot be met by BOA because BOA cannot produce the mortgage note. *Id.* Consequently, the plaintiff alleges that the foreclosure proceedings were premised on inaccurate documentation. *Id.*

Based upon the plaintiff's belief that the foreclosure action was improper and that any eviction action based on such foreclosure would be unlawful, the plaintiff also sued the Sheriff of San Joaquin County in his personal and private capacity, along with the entire San Joaquin County Sheriff's Department (collectively known as the "Sheriff's Department Defendants"). *Id.* ¶ 21. The plaintiff alleges that the Sheriff "either knew or should have known that the consent [judgment] issued by this court in the . . . case filed against the[] five largest banks" was in force, and that he "is assisting the five largest banks in violating the" Consent Judgment. *Id.* In fact, the plaintiff alleges that the Sheriff "has set a custom and policy to defy and ignore the" Consent Judgment. *Id.* Based upon this policy, the Sheriff's Department will "take actions in defiance of the" Consent Judgment while "acting as agents for and on behalf of" BOA. *Id.*

Likewise, the plaintiff has named the Superior Court of the State of California, County of San Joaquin as a defendant in the instant suit to enjoin the Superior Court "prospectively" from issuing a future eviction notice. *Id.* ¶ 2.[2]

Based on the factual allegations outlined above, the plaintiff has styled seven causes of action ("COA"): (1) "An order of Cease and Desist in the Nature of Injunctive Relief" for "violation of the consent decree" to prevent the plaintiff's eviction from her home ("First COA"), FAC ¶¶ 2; 83; (2) "[v]iolation of the [plaintiff's] Rights to Due Process of law and Intentional infliction of emotional distress" ("Second COA"), *id.* ¶ 107; (3) "conspir[acy]" by the

---

[2] The plaintiff has also named 20 unidentified "Doe" defendants allegedly involved in the foreclosure of her San Joaquin County home.

3

defendants, in "violation of Section 1983, 1985 and 1986 of Title 42, US Code, [s]ince the Non-state actors employed and used the state actors and government organs and instrumentalities to carry out their unlawful activities" ("Third COA"), *id.* ¶ 122; and (4) violations of the Federal False Claims Act, 31 U.S.C. § 3729, against all defendants ("Fourth, Sixth, and Seventh COAs"), *id.* ¶¶ 127–34; 144–58, and against the Bank defendants ("Fifth COA"), *id.* ¶¶ 135–43.

The plaintiff seeks declaratory relief to reverse the foreclosure sale, *id.* ¶ 168, to issue a cease and desist order prohibiting "any further actions to sell the property subsequent to the fraudulent foreclosure on this alleged debt" or to evict the plaintiff from the subject property, *id.* ¶¶ 170–71, and a judgment declaring that BOA has never had any right to enforce the note, *id.* ¶ 169. Additionally, the plaintiff seeks an award of compensatory damages "in an amount to be proven at the time of trial." *Id.* ¶ 161.

The plaintiff asserts that "jurisdiction to hear this case" is proper in this Court because "this court issued a prior ruling in the United States v. BANK OF AMERICA, NA, et al. case number 12 0361." FAC ¶ 1. That consent judgment requires named financial service entities, including BOA, to comply with certain loan servicing standards and further provides that obligations under this Consent Judgment shall be enforceable solely in the U.S. District Court for the District of Columbia. *See* Unrelated Consent Judgment at ¶¶ 6–8; Ex. E ("Enforcement terms") at E-14, ECF No. 11. The Unrelated Consent Judgment limits any enforcement actions to "any Party to this Consent Judgment or the Monitoring Committee." *Id.*; Enforcement terms at E-14–15. The only named party in the instant action that is also a party to the Unrelated Consent Judgment is BOA. *See generally* Unrelated Consent Judgment.

On January 27, 2014, the plaintiff filed a Motion for a Temporary Restraining Order. *See* Pl.'s Mot. Expediting Temporary Restraining Order, ECF No. 31. That motion is currently

4

pending before the Court.³ In addition, pending before the Court are motions by all defendants to dismiss this action for improper venue, pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure. The Bank Defendants further move to dismiss this action on *res judicata* grounds, for improper service and failure to state a claim, pursuant to Rules 12(b)(4) and (6), respectively, and failure to comply with Rule 8(a). The Superior Court also moves to dismiss on *res judicata* grounds, and the Sheriff Department Defendants move to dismiss for failure to state a claim under Rule 12(b)(6). While the defendants have raised a number of grounds for dismissal that have merit, for the reasons explained below, the motion by all defendants to dismiss the action for improper venue is granted and the case is dismissed.⁴

## II. LEGAL STANDARD

### A. Improper Venue

Rule 12(b)(3) of the Federal Rules of Civil Procedure authorizes a party to move to dismiss a case for "improper venue." FED. R. CIV. P. 12(b)(3). Similarly, the federal venue statute, 28 U.S.C. § 1406(a), requires that a district court "dismiss, or if it be in the interest of justice, transfer" a case, which is filed "in the wrong division or district." 28 U.S.C. § 1406(a). Together, "Section 1406(a) and Rule 12(b)(3) allow dismissal only when venue is 'wrong' or 'improper'. . . in the forum in which [the case] was brought." *Atl. Marine Constr. Co. v. United States Dist. Court*, 134 S. Ct. 568, 577 (2013). The Supreme Court explained that "[w]hether venue is 'wrong' or 'improper' depends exclusively on whether the court in which the case was brought satisfies the requirements of federal venue laws." *Id*.

---

³ The plaintiff previously filed an "*ex parte*" motion for a preliminary injunction. *See* Pl.'s Request for Preliminary Injunction, Ex Parte, ECF No. 25. This motion was stricken by the Court for failure to comply with Federal Rule of Civil Procedure 65(a)(1) and Local Civil Rule 65.1. *See* Minute Order (Jan. 13, 2014).
⁴ For this reason, the plaintiff's Motion for a Temporary Restraining Order is denied as moot.

5

"When venue is challenged, the court must determine whether the case falls within one of the three categories set out in § 1391(b)," *id.*, which governs "the venue of all civil actions brought in district courts of the United States." 28 U.S.C. § 1391(a)(1). Specifically, venue of a civil case is properly laid in the following three categories of judicial district: where "any defendant resides, if all defendants are residents of the State in which the district is located;" where "a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated;" or where "any defendant is subject to the court's personal jurisdiction with respect to such action," so long as venue is unavailable in any other district. *Id.* § 1391(b).

The moving party objecting to venue must provide "sufficient specificity to put the plaintiff on notice of the defect" that the case fails to fall within one the three categories set out in section 1391(b). 14D CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 3826, at 496 (4th ed. 2013). Nevertheless, the burden remains on the plaintiff to establish that venue is proper since it is "'the plaintiff's obligation to institute the action in a permissible forum . . . .'" *Williams v. GEICO Corp.*, 792 F. Supp. 2d 58, 62 (D.D.C. 2011) (quoting *Freeman v. Fallin,* 254 F. Supp. 2d 52, 56 (D.D.C. 2003)); *see also* WRIGHT ET AL., § 3826, at 502, 505–06 ("[W]hen [an] objection has been raised, the burden is on the plaintiff to establish that the district he [or she] chose is a proper venue[,] . . . consistent with the plaintiff's threshold obligation to show that the case belongs to the particular district court in which the suit has been instituted."). In reviewing a motion for improper venue, the court "'accepts the plaintiff's well-pled factual allegations regarding venue as true, draws all reasonable inferences from those allegations in the plaintiff's favor and resolves any factual conflicts in the plaintiff's favor.'" *Wilson v. Obama*, 770 F. Supp. 2d 188, 190 (D.D.C. 2011) (quoting *James v. Verizon Servs. Corp.,* 639 F. Supp. 2d

9, 11 (D.D.C. 2009)). The court may resolve the motion on the basis of the complaint alone, or, as necessary, examine facts outside the complaint that are presented by the parties, while drawing reasonable inferences in favor of the plaintiff. *Herbert v. Sebelius*, 925 F. Supp. 2d 13, 17–18 (D.D.C. 2013).

### B. Failure To State A Claim

The Federal Rules of Civil Procedure require that a complaint contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A motion under Rule 12(b)(6) does not test a plaintiff's likelihood of success on the merits; rather, it tests whether a plaintiff properly has stated a claim. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). Although "detailed factual allegations" are not required to withstand a Rule 12(b)(6) motion, a complaint must offer "more than labels and conclusions" to provide "grounds" of "entitle[ment] to relief." *Twombly*, 550 U.S. at 555 (alteration in original). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557) (alteration in original). The Supreme Court stated "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556).

*Pro se* plaintiffs are "[held] to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *see also Fletcher v. Reilly*, 433 F.3d 867, 877 (D.C. Cir. 2006); *United States v. Palmer,* 296 F.3d 1135, 1143 (D.C. Cir. 2002);

7

*Rogler v. U.S. Dep't of Health and Human Servs.*, 620 F. Supp. 2d 123, 127 (D.D.C. 2009). Nevertheless, "even a *pro se* complainant must plead 'factual matter' that permits the court to infer 'more than the mere possibility of misconduct.'" *Atherton v. District of Columbia Office of Mayor*, 567 F.3d 672, 681–82 (D.C. Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679).

**C.     Issue Preclusion**

"The preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as '*res judicata*.'" *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008). Claim preclusion "forecloses 'successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit.'" *Id.* (quoting *New Hampshire v. Maine*, 532 U.S. 742, 748 (2001)). In contrast, issue preclusion, which was "once known as 'collateral estoppel' and 'direct estoppel,'" bars "successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim." *Id.* at 892, n.5 (internal quotations and citations omitted); *see also U.S. Postal Serv. v. Am. Postal Workers Union*, 553 F.3d 686, 696 (D.C. Cir. 2009) ("Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case.") (internal quotation marks and citation omitted). The Supreme Court has explained that these preclusion doctrines serve the important functions to "protect against 'the expense and vexation attending multiple lawsuits, conserv[e] judicial resources, and foste[r] reliance on judicial action by minimizing the possibility of inconsistent decisions.'" *Taylor*, 553 U.S. at 892 (quoting *Montana v. United States*, 440 U.S. 147, 153–154 (1979)) (alteration in original); *see also Yamaha Corp. of Am. v. United States*, 961 F.2d 245, 254 (D.C. Cir. 1992) ("The objective of the doctrine of issue preclusion . . . is judicial finality; it fulfills 'the purpose for which civil courts have been

8

established, the conclusive resolution of disputes within their jurisdiction.'") (quoting *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 467 n.6 (1982)).

Three elements must be satisfied for a final judgment to preclude litigation of an issue in a subsequent case: "[1], the same issue now being raised must have been contested by the parties and submitted for judicial determination in the prior case[; 2] the issue must have been actually and necessarily determined by a court of competent jurisdiction in that prior case [; and] [3] preclusion in the second case must not work a basic unfairness to the party bound by the first determination." *Martin v. Dep't of Justice*, 488 F.3d 446, 454 (D.C. Cir. 2007) (quoting *Yamaha*, 961 F.2d at 254 (D.C. Cir. 1992)) (alterations in original). "[O]nce a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *McLaughlin v. Bradlee*, 803 F.2d 1197, 1201 (D.C. Cir. 1986) (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)).

The overriding goal of the issue preclusion doctrine is to "avert needless relitigation and disturbance of repose, without inadvertently inducing extra litigation or unfairly sacrificing a person's day in court." *Otherson v. U.S. Dep't of Justice*, 711 F.2d 267, 273 (D.C.Cir.1983). When the first two prerequisites for application of the issue preclusion doctrine are met, the plaintiff "must be permitted to demonstrate, if he can, that he did not have a fair opportunity procedurally, substantively, and evidentially to pursue his claim the first time." *Blonder–Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 333 (1971) (internal quotation marks omitted). As the Supreme Court explained, "a party who has had one fair and full opportunity to prove a claim and has failed in that effort, should not be permitted to go to trial on the merits of that claim a second time. Both orderliness and reasonable time saving in judicial administration

9

require that this be so unless some overriding consideration of fairness to a litigant dictates a different result in the circumstances of a particular case." *Id.* at 324–25.

Notably, "[a] court conducting an issue preclusion analysis does not review the merits of the determinations in the earlier litigation." *Consol. Edison Co. of N.Y. v. Bodman*, 449 F.3d 1254, 1257 (D.C. Cir. 2006); *see also Nat'l Post Office Mail Handlers, Watchmen, Messengers, and Grp. Leaders Div. of Laborers' Int'l Union of N. Am. v. Am. Postal Workers Union*, 907 F.2d 190, 194 (D.C. Cir. 1990) ("The doctrine of issue preclusion counsels us against reaching the merits in this case, however, regardless of whether we would reject or accept our sister circuit's position."); *Yamaha Corp. of Am. v. United States*, 745 F. Supp. 734, 738 (D.D.C. 1990) (noting the D.C. Circuit's instruction "that collateral estoppel prevents a court from ever reaching the merits").

### III.    DISCUSSION

As noted, the plaintiff is seeking declaratory, injunctive, and compensatory relief to prevent her eviction and the finalization of a foreclosure sale on the California Property. *See* FAC ¶¶ 159–176 ("Relief Requested" and "Additional Relief Requested"). Based on her allegation that the defendants conspired with BOA in violation of the Unrelated Consent Judgment, the plaintiff has filed her lawsuit in the District of Columbia. *Id.* ¶ 1. As explained below, the Court agrees with the defendants that this jurisdiction is not the proper venue for this action and further finds that dismissal, rather than transfer, is appropriate because the plaintiff has also failed to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6) and her claims are otherwise precluded under *res judicata* principles.

### A. Venue Is Improper In The District Of Columbia

This action fails to satisfy any of the three categories for proper venue in this district under the general venue statute, 28 U.S.C. § 1391(b).[5] First, the complaint does not allege that any of the named defendants reside in the District of Columbia. FAC ¶ 23. Consequently, this district is not one "in which any defendant resides, if all defendants are residents of the State in which the district is located." 28 U.S.C. § 1391(b)(1).

Second, this district is not where "a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(b)(2). On the contrary, according to the complaint, none of the alleged actions committed by the defendants occurred in the District of Columbia. *See* FAC, *generally*. Specifically, the foreclosure sale and the anticipated unlawful detainer order would emanate from the California Superior Court and involved the California Property located in that state. FAC ¶ 23. Finally, if no other district is appropriate, venue is proper in "any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b)(3). Here, the Court need not reach the issue of whether "any defendant is subject to the court's personal jurisdiction," because the predicate requirement is not met. Specifically, there is another district that would be appropriate to hear this matter and that district is where the disputed California Property is located, to wit: California.

In short, the lack of proper venue for this case in the District of Columbia is plain. The complaint contains no allegations that any of the defendants reside in the District of Columbia,

---

[5] This statutory provision states, in full: "A civil action [where jurisdiction is not founded solely on diversity of citizenship] may be brought only in (1) a judicial district where any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided by this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b).

that the property at issue is located in the District of Columbia, that the allegedly fraudulent transfer of the loan took place in the District of Columbia, or that the allegedly unlawful foreclosure or detainer action on the plaintiff's property had any connection to this jurisdiction.

Nevertheless, the plaintiff asserts that venue is proper in this jurisdiction based upon the Unrelated Consent Judgment. FAC ¶ 1. The Unrelated Consent Judgment, however, simply does not create a private right of action allowing third parties, such as the plaintiff, to bring claims for alleged violations of the Judgments, let alone unrelated claims in this jurisdiction. *See Ananiev v. Wells Fargo Bank, NA*, No. 12-1804, 2013 U.S. Dist. LEXIS 130208, at *15–16 (D.D.C. Sept. 12, 2013) (concluding that same Unrelated Consent Judgment did not confer private right of action on non- party to consent decree, nor allow venue in this district for suit relating to property in California); *accord Rafferty v. NYNEX Corp.*, 60 F.3d 844, 849 (D.C. Cir. 1995) ("Unless a government consent [judgment] stipulates that it may be enforced by a third party beneficiary, only the parties to the [judgment] can seek enforcement of it."); *Beckett v. Air Line Pilots Ass'n*, 995 F.2d 280, 288 (D.C. Cir. 1993) ("Only the Government can seek enforcement of its consent [judgments] . . . therefore, even if the Government intended its consent [judgment] to benefit a third party, that party could not enforce it unless the [judgment] so provided."). Accordingly, the plaintiff's reliance on the Unrelated Consent Judgment as the basis for venue in the District of Columbia is simply misplaced and venue in this jurisdiction is improper.

### B. Dismissal Rather Than Transfer Is Appropriate

Under 28 U.S.C. § 1406(a), the district court shall dismiss an action filed in an improper venue or, if it is in the interest of justice, transfer such case to any district in which it could have been brought. The decision of whether dismissal or transfer is "in the interest of justice" is

committed to the sound discretion of the district court. *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 789 (D.C. Cir. 1983); *Corbett v. Jennifer*, 888 F. Supp. 2d 42, 46 (D.D.C. 2012). While "the standard remedy for improper venue is to transfer the case to the proper court rather than dismissing it," *National Wildlife Fed'n v. Browner*, 237 F.3d 670, 674 (D.C. Cir. 2001), dismissal is appropriate "when the outcome is foreordained," *Simpkins v. District of Columbia Gov't*, 108 F.3d 366, 371 (D.C. Cir. 1997) (noting that "it made little sense to transfer the case to another jurisdiction pursuant to 28 U.S.C. § 1406" since "[t]hat would have kept the case alive only until the next court looked it over and found it wanting"). *See also Buchanan v. Manley*, 145 F.3d 386, 389 n.6 (D.C. Cir. 1998) (no abuse of discretion for district court to dismiss rather than transfer where there were "substantive problems" with the plaintiff's claims); *Laukus v. United States*, 691 F. Supp. 2d 119, 127 (D.D.C. 2010) (citing *Phillips v. Seiter*, 173 F.3d 609, 610–11 (7th Cir. 1999)) (district courts may take a "peek at the merits" when deciding whether a transfer is in the interests of justice); *Roman-Salgado v. Holder*, 730 F. Supp. 2d 126, 131 (D.D.C. 2010) (dismissing rather than transferring case for improper venue where "it appears that the complaint in its current form would likely face dismissal without prejudice for failure to state a claim").

A review of the plaintiff's FAC demonstrates significant, substantive problems with the plaintiff's claims. These deficiencies, in turn, are such that transfer of this case to another district court would only "delay[] the inevitable" and not be "in keeping with the Supreme Court's instruction to the lower federal courts 'to weed out' insubstantial [] suits 'expeditiously.'" *Simpkins*, 108 F.3d at 370.

### 1. *First COA: Defendants' Alleged Conspiracy To Violate The Consent Judgment*

The plaintiff's First COA attempts to describe the various actions undertaken by the defendants in violation of the Unrelated Consent Judgment. FAC ¶ 83. The plaintiff was not a party to this consent judgment, and therefore, is unable to enforce any obligation imposed upon the parties to the judgment. *See* Enforcement terms at E-14–15. Consequently, the plaintiff's First COA is dismissed for failure to state a claim upon which relief may be granted.

### 2. *Second and Third COA: Alleged Due Process Violation, Intentional Infliction Of Emotional Distress And Conspiracy Claims*

The plaintiff's Second and Third COA address a myriad of claims that have been previously raised by the plaintiff in an earlier suit against the same defendants, premised on the foreclosure of the same property in San Joaquin County, California. On January 15, 2010, the plaintiff filed suit in the District Court for the District of Columbia against BOA, the Sheriff's Department defendants, and the Superior Court. *See* Compl. ¶¶ 16–17, *McCain v. Bank of Am., N.A.*, No. 10-cv-84 (D.D.C. Jan. 15, 2010) ("*McCain I*"), ECF No. 1. In the complaint, the plaintiff sought to quiet title on her property located in San Joaquin County, sought a cease and desist order for foreclosure notices, and sought a cease and desist order preventing foreclosure of a loan obtained for the property. *See id.* ¶¶ 46–107. After noting that the action pertained solely to California interests, involved a "California resident against defendants including the Superior Court and Sheriff for San Joaquin County, California, and asserted a claim to quiet title over property located in . . . California," the court transferred the matter to the District Court for the Eastern District of California. Order at 1–2, ECF No. 18.

The district court in California, in turn, dismissed the suit with prejudice, noting that in addition to the plaintiff's quite title and fraudulent inducement claims, the "[p]laintiff further

14

alleges her due process rights have been violated in connection with nonjudicial foreclosure." *McCain v. Bank of Am., NA*, CIV 10-1266, 2010 U.S. Dist. LEXIS 113956, at *2 (E.D. Cal. Oct. 26, 2010) ("*McCain II*"). The district court held that the "plaintiff's due process claim is fatally deficient in that this claim rests upon the assertion that her property cannot be foreclosed upon unless defendant Bank of America demonstrates it is the holder of the note. This assertion is untenable because under the California nonjudicial foreclosure statutes, the trustee or beneficiary is not required to be a holder in due course of the instrument." *Id.* at *3 (internal citations omitted). The district court also dismissed the plaintiff's 42 U.S.C. § 1983 claim, which was premised on "allegations that some of the defendants were involved, in various ways, with a nonjudicial foreclosure sale because such activities do not constitute state action." *Id.* (internal citations omitted). Finally, the plaintiff sought to prevent the Superior Court "from acting on any unlawful detainer action brought against her." *Id.* at *4. The court found that this claim was barred by the Eleventh Amendment. *Id.*

The Bank defendants and the Superior Court argue that the prior resolution of the plaintiff's 2010 suit precludes the plaintiff from re-raising these same arguments in the instant complaint. *See* Bank Defs.' Mem. Supp. Mot. Dismiss ("Bank Defs.' Mem.") at 4, ECF No. 19; Superior Court Def. Mem. Supp. Mot. Dismiss ("Sup. Court Mem.") at 3, ECF No. 9-2. The fact that the causes of action in the instant suit are not identical to the causes of action in the prior *McCain II* suit is not an impediment to the application of collateral estoppel. "Whether two cases implicate the same cause of action turns on whether they share the same 'nucleus of facts.'" *Apotex, Inc. v. FDA*, 393 F.3d 210, 217 (D.C. Cir. 2004) (quoting *Drake,* 291 F.3d at 66); *Page v. United States*, 729 F.2d 818, 820 (D.C. Cir. 1984). Plainly, the factual allegations underpinning the plaintiff's current claims mirror those in the dismissed action. In the dismissed

action, the plaintiff claimed to "prospectively" prevent any unlawful detainer action and her due process and § 1983 claims were dismissed. *See McCain II*, 2010 U.S. Dist. LEXIS 113956 at *5. There are even more similarities. The FAC avers that BOA is barred from seeking foreclosure on the plaintiff's home absent demonstrating that it is the holder of the note. FAC ¶ 27. The district court directly refuted this assertion, noting that under California law "the trustee or beneficiary is not required to be a holder in due course." *McCain II*, 2010 U.S. Dist. LEXIS 113956 at *3.

The plaintiff s had ample opportunity to raise in her prior suit the same claims and arguments raised in the instant suit. She has already had her day in court. *See Martin*, 488 F.3d at 454. In these circumstances, preclusion would not be unfair to the plaintiff and, therefore, her Second and Third COAs are dismissed under the doctrine of issue preclusion.[6]

### 3. Fourth, Fifth, Sixth, and Seventh COA: Plaintiff's Federal False Claims Act Claims

In contrast to the plaintiff's 2010 suit, the FAC contains four claims premised on violations of the Federal False Claims Act, 31 U.S.C. § 3729 *et seq*. *See* FAC ¶¶ 127–58. To the extent that the plaintiff seeks to avoid the preclusive effects stemming from the dismissal, with prejudice, of her previous suit, the complaint is utterly devoid of the factual elements necessary to state a claim under the False Claims Act. "A proper False Claims Act claim has three elements: (1) the defendant presented a claim for payment or approval to the government, (2) the claim was 'false or fraudulent,' and (3) the defendant acted knowing that the claim was false."

---

[6] The plaintiff's first COA appears to include alleged violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*. *See* FAC ¶ 105. Alleged violations of the FDCPA were asserted by the plaintiff in *McCain II* but dismissed with prejudice. *McCain I*, 2010 U.S. Dist. LEXIS 113956, at *5 n.2. Consequently, to the extent that the plaintiff asserts FDCPA violations against the same defendants as in *McCain II*, those claims are also precluded.

*U.S. ex rel. Folliard v. Govplace*, 930 F. Supp. 2d 123, 127 (D.D.C. 2013) (internal citations omitted). None of these elements is addressed by the plaintiff.

Additionally, and critically for the plaintiff's False Claims Act claims, a relator in a *qui tam* action may not proceed *pro se*. *See U.S. ex rel. Fisher v. Network Software Assocs.,* 377 F. Supp. 2d 195, 196 (D.D.C. 2005); *Rockefeller v. Westinghouse Elec. Co.,* 274 F. Supp. 2d 10, 12 (D.D.C. 2003) (holding that "[t]he need for adequate legal representation on behalf of the United States is obviously essential."). As the plaintiff makes clear, she is proceeding *ex relatione* seeking "to recover, on behalf of the United States of America, the States [sic] of California, damages and civil penalties arising from the sale" of assets-backed securities, "using funds provided by the United States." FAC ¶ 4. The plaintiff's Fourth, Fifth, Sixth, and Seventh COAs are therefore dismissed for failure to state a claim upon which relief can be granted.

## IV. CONCLUSION

For the foregoing reasons, the defendants' motions to dismiss for improper venue, ECF Nos. 9, 10, 15, and 16, are GRANTED, and the plaintiff's Motion for a Temporary Restraining Order, ECF No. 31, is DENIED as moot.

An appropriate Order accompanies this Memorandum Opinion.

Date: January 30, 2014

_____
BERYL A. HOWELL
United States District Judge